STATE of Maine

v.

Donald D. THERIAULT.

Supreme Judicial Court of Maine.

Argued Nov. 12, 1980.

Decided Feb. 13, 1981.

Charles K. Leadbetter, Asst. Atty. Gen., (orally), Augusta, for plaintiff.

Franklin Stearns, (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and ROBERTS, JJ.

GODFREY, Justice.

Convicted of murder in violation of 17–A M.R.S.A. § 201(1)(A) (1980), defendant Donald D. Theriault appeals on two grounds: that the evidence showed him to be guilty only of manslaughter, and that he was improperly induced to make a confession.[1] We affirm the judgment of conviction.

I.

*Sufficiency of the Evidence*

On July 14, 1979, Theriault went to Beech Ridge Speedway in Scarborough, Maine, to watch some automobile races. He traveled to the speedway in his customized van, which contained a powerful stereo system. That evening, while accompanied by his friend Everett Hashey, Theriault offered a ride to Sally Ann Stiles, with whom Theriault was only casually acquainted. Soon afterward Hashey left the vehicle, and Theriault and Sally Stiles continued by themselves.

Theriault drove the van aimlessly through the Scarborough-Gorham area while he and Stiles drank beer. During those travels, Stiles repeatedly turned the stereo system up to a deafening volume over Theriault's protests, causing him considerable irritation. While the van was parked in a field and Theriault was in the rear picking up empty beer bottles, Stiles again turned up the stereo system. Unfortunately, at the moment she turned it up, Theriault was crouched on the floor of the van with his head between two of the stereo speakers. Angered by the din, Theriault reached around the passenger's seat where Stiles was sitting and grasped her by the throat with both hands. Theriault testified that he intended only to frighten her. After gripping her neck until she assumed a blank expression, Theriault released his grasp. Stiles made a few grunting noises and lay motionless. Theriault removed her from his van near the Gambo Dam in Gorham and drove off.

The next morning two canoeists discovered Stiles's body floating in a stream below the dam. A medical examiner concluded that her throat had been crushed and that she had died of manual strangulation.

Theriault admits that he caused the death of Stiles. However, he asserts that the evidence proved conclusively that he acted while under the influence of extreme anger caused by adequate provocation and hence should be deemed guilty only of manslaughter by application of 17–A M.R.S.A. § 203(1)(B) (1980). That section provides, in pertinent part, as follows:

A. He intentionally or knowingly causes the death of another human being . . . .

1. Section 201(1)(A) provides, in pertinent part:
   1. A person is guilty of murder if:

1. A person is guilty of manslaughter if he:

.   .   .   .   .

B. Causes the death of another human being under circumstances which would otherwise be murder except that the actor causes the death while under the influence of extreme anger ... brought about by adequate provocation.

Theriault argues that the sudden turning up of the stereo system was a provocation which, as a matter of law, was adequate to cause extreme anger. The applicability of section 203(1)(B) having been thus put in issue, the state was required to prove beyond a reasonable doubt that Theriault killed Stiles at a time when he was not "under the influence of extreme anger ... brought about by adequate provocation."

Section 203(2) of 17–A M.R.S.A. provides, in pertinent part, as follows:

For purposes of subsection 1, paragraph B, provocation is adequate if:
A. It is not induced by the actor; and
B. It is reasonable for the actor to react to the provocation with extreme anger ... provided that evidence demonstrating only that the actor has a tendency towards extreme anger ... shall not be sufficient, in and of itself, to establish the reasonableness of his reaction.

Hence, for the provocation in this case to have been adequate, it must not have been induced by Theriault and it must have been reasonable for Theriault to react to the provocation with extreme anger.

▪ Whether Theriault killed Stiles while he was under the influence of extreme anger brought about by adequate provocation was a question properly left to the jury with appropriate instructions. *State v. Flick*, Me., 425 A.2d 167 (1981); *State v. Lagasse*, Me., 410 A.2d 537 (1980). It was for the jury to determine whether, in fact, Theriault killed Stiles while under the influence of extreme anger. If it found

that he did, it was then for the jury to apply the statutory standard of reasonableness to his reaction in order to determine whether the provocation was adequate. Both those determinations must be treated as resolving questions of fact.

▪ When a conviction is challenged on the ground of insufficiency of the evidence, the Law Court will set the conviction aside only if no trier of fact could rationally find proof of guilt beyond a reasonable doubt, any doubts about the correctness of the jury's determination of factual questions being resolved in favor of the verdict. *State v. Perfetto*, Me., 424 A.2d 1025 (1981). In the present case the jury could have rationally found that even if Theriault was extremely angry when he killed Stiles, it was unreasonable for him to have become so angry in response to her turning up the stereo. On the evidence, the jury could have rationally found beyond a reasonable doubt an absence of the adequate provocation that is necessary to reduce murder to manslaughter.

## II.

### *Voluntariness of the Confession*

▪ Before trial, Theriault moved in Superior Court to suppress as evidence any written or oral admissions he had made to the investigating police officers. In Theriault's view, his admissions were the result of express and implied promises of leniency by the police and hence were involuntary as a matter of law. As required by *State v. Collins*, Me., 297 A.2d 620 (1972), the Superior Court held an evidentiary hearing, at which the police officers who had interviewed Theriault testified. Theriault himself, though present, did not testify at the hearing. The presiding justice denied the motion, concluding that Theriault's admissions had not been involuntarily elicited by promises of lenient treatment.[2] Finding

---

2. The presiding justice did not say expressly that he reached his conclusion "beyond a reasonable doubt", the standard of proof required by *Collins*. The following observation contained in footnote 4 in *State v. Ashe*, Me., 425

A.2d 191 (1981), is applicable to the present case:

The presiding justice did not state expressly that the quantum of proof on which he arrived at his findings was 'beyond a reason-

that Theriault had been fully advised of his Fifth Amendment rights three times during his interrogation before he confessed, the judge concluded that Theriault had knowingly and intelligently waived those rights.

■ Whether a confession is admissible is a question reserved to the justice presiding at the hearing on a motion to suppress, and the justice's decision of that issue will not be disturbed on appeal if there is evidence providing rational support for his conclusion. *State v. Smith*, Me., 415 A.2d 553, 558 (1980); *State v. Collins*, Me., 297 A.2d 620, 635–36 (1972).

From the testimony at the suppression hearing, the presiding justice would have been warranted in concluding that the following events occurred: At about ten-thirty on the morning of July 16, Theriault and his friend Everett Hashey arrived at the Gorham Police Department. The two told police that they had been with Sally Stiles the night before her death and thought they might be able to help the police investigation. Theriault told Detective James Pinette that he had been riding in Hashey's car near Beech Ridge Speedway and that they had given Stiles a ride. According to Theriault, they had driven Stiles around for some time and had finally let her off in Gorham. The interview lasted about forty minutes. Theriault made no incriminating statements, and Detective Pinette freely allowed him to leave.

At about 12:30 p. m. on the same day, Detective Pinette went to Theriault's gas station in Gorham seeking clarification of Theriault's story. During their short conversation Theriault again made no incriminating statements. Detective Pinette returned to Theriault's gas station at 3:00 p. m. on the same day. Pinette told Theriault that Pinette's superior, Lieutenant LaMontagne, wished to speak with him at the Gorham Police Department. Theriault agreed to this suggestion, and they traveled to the police station in Pinette's vehicle.

Thirty minutes later Pinette and LaMontagne began interviewing Theriault. As before, Theriault made no incriminating admissions and maintained a basically consistent story. Following the interview, the officers requested Theriault to go to the state police barracks at Scarborough for further discussions. Theriault readily acceded to the proposal.

The interview at the police barracks began at 4:30 p. m. and was conducted by Corporal Holmes. Just before the interview began, Theriault mentioned that someone had suggested he obtain a lawyer. Pinette asked Theriault whether he in fact wanted a lawyer. Theriault replied that he did not, but assured the police that if he wanted a lawyer later he would request one. Thereupon Corporal Holmes read Theriault his *Miranda* rights, and Theriault waived them.

After the interview, which had included a polygraph test, Holmes told Pinette that he felt Theriault was not telling the entire truth. While he was transporting Theriault back to the Gorham Police Department, Pinette told Theriault that he did not believe Theriault had been completely honest with him. However, Theriault was neither arrested nor placed in any form of custody.

At about 9:00 p. m., Pinette and Theriault arrived at the Gorham Police Department, where Lieutenant LaMontagne and Detective Pinette resumed interviewing Theriault. At that point in the investigation the police suspected that Everett Hashey had committed the murder and that Theriault's sketchy testimony was the result of an attempt to protect Hashey. But because Theriault might have been guilty of concealing evidence, Detective Pinette read Theriault his *Miranda* rights before the in-

---

able doubt.' Neither, however, did he say anything suggesting that he used any lesser quantum of proof. In these circumstances, since we conclude that the evidence was sufficient to support the findings of the justice in accordance with the proof-quantum 'beyond a reasonable doubt', we need not re-

mand the case to have the presiding justice make an express statement that, in conformity to legal requirements, he made his findings beyond a reasonable doubt. *See State v. Collins, supra,* at 630; *State v. Smith,* Me., 415 A.2d 553, 557 58 (1980).

terview began. Theriault again waived those rights.

During that interview occurred the events to which Theriault particularly objects. The police officers told Theriault they thought he was protecting someone and exhorted him to tell the whole truth. Specifically, Detective Pinette counseled Theriault that "if he got it off his chest, he would feel better." Lieutenant LaMontagne suggested that "it would be better to tell us [the truth]," that "it would make him feel better," and that "people would think more of him if he got it off his chest." According to the testimony, neither officer at any time stated or alluded to a possibility that if Theriault confessed he would be treated more leniently by the prosecution, the judge, or the jury.

Soon after those remarks were made, Theriault revealed that he was not protecting another but was concealing his own guilt. There followed a full confession. Before writing his confession, Theriault read two printed forms listing his *Miranda* rights and again waived them. He was then arrested.

The defendant contends that his admissions were not voluntarily made, resting the contention solely on the ground that the police officers' comments amounted to an implied promise that the criminal justice system would be more lenient toward him if he confessed. Conceding that he had been advised of his *Miranda* rights, he argues that the officers' implied promise of leniency rendered his confession involuntary and therefore inadmissible as evidence. We cannot accept the defendant's characterization of the police officers' conduct.

■ Despite the giving of *Miranda* warnings, a confession may be involuntary not only when it is extorted from the accused by a threat but also when it is elicited by a promise of leniency. The promise must amount to more than a mere admonition or exhortation to tell the truth. *See State v. Tardiff*, Me., 374 A.2d 598 (1977).

■ Nothing in the record in this case suggests that the presiding justice erred in finding that Theriault's confession was not induced by improper promises of leniency, express or implied. The officers' statements that telling the complete truth would make Theriault feel better or make people think more of him are in the nature of exhortations rather than promises of prosecutorial leniency. Nothing in the officers' statements, considered either by themselves or in the context of all the circumstances, amounted to an express or implied promise that if Theriault confessed, the law enforcement authorities would seek to invoke less severe penalties against him than if he did not.

This Court has held that similar statements do not represent improper inducement for a confession. *E. g., State v. Smith*, Me., 415 A.2d 553, 557–58 (1980). That holding is echoed in numerous decisions from other jurisdictions. *See, e. g., People v. Wischemann*, 94 Cal.App.3d 162, 156 Cal.Rptr. 386; *Daniel v. State*, 150 Ga. App. 798, 258 S.E.2d 604 (1979); *Turpin v. State*, 400 N.E.2d 1119 (Ind.1980); *State v. Tillery*, 227 Kan. 342, 606 P.2d 1031 (1980). The evidence supports the conclusion of the presiding justice that Theriault's confession was voluntary.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.