### STATE of Maine

v.

### Peter P. PERRY.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1988.
Decided Jan. 5, 1989.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for plaintiff.

John D. Bunker (orally), Paine, Lynch & Harris, P.A., Bangor, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

In a jury-waived trial in the Superior Court (Penobscot County; *Pierson, J.*), Peter Perry was convicted of one count of gross sexual misconduct, 17–A M.R.S.A. § 253 (1983 & Supp.1988). On appeal he asserts that the Superior Court's restrictions on his access to records of the Bangor Police Department and the Department of Human Services (DHS) violated M.R. Crim.P. 16 and provisions of the Maine and United States Constitutions; that the court erred in refusing him access to a psychiatric evaluation of the victim-witness; that the victim-witness' identification of him in court was tainted and inadmissable; that the State failed to show that the criminal act occurred within the period of the statute of limitations, or that a sexual act even occurred between Perry and the victim; and that the court erroneously refused to admit evidence regarding a different Peter's pierced ear. We affirm.

This case is one of several involving sexual abuse of the four children of a Bangor family. They have named many people as having sexually abused them. They say that there were "parties" during which many adults, including their parents, abused them, that their parents filmed the sexual acts, and that all other adults were "doing the same things, except for the teachers at school." The children's mother, father and an "uncle" have all been convicted as a result of this activity. In

addition to Perry's appeal, we also consider today the appeal of another defendant in *State v. Gagne*, 554 A.2d 795 (Me.1989).

As a result of discovery motions by defendants and protective motions by the State, the Superior Court in a series of orders (Beaulieu, J; Chandler, J.; Silsby, J.) permitted editing of DHS and Bangor Police Department investigative records to remove the names of individuals and places that the children had identified but that did not involve activity by the particular defendant. Perry's lawyer was free to examine the materials as edited. (The court did place certain restrictions on copying and access, but it is only the editing that Perry has challenged.) Perry sought access to the edited names and places at trial and now on appeal on the ground that some of the accused individuals may have been prominent people or situated in positions such that legitimate questions concerning the children's credibility could be raised.

▆ DHS records concerning child protective activities are made confidential by statute, 22 M.R.S.A. § 4008 (Supp.1988). The only relevant exception is a court "finding that access to those records may be necessary for the determination of any issue before the court." 22 M.R.S.A. § 4008(3)(B). In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) the United States Supreme Court dealt with a confidentiality statute for child protection records in Pennsylvania. In *Ritchie*, the trial judge had not examined the file, but merely accepted departmental assertions concerning what was in the file and refused to order disclosure of the files to the defendant. A majority of the United States Supreme Court agreed that the trial court must conduct an *in camera* review of the records but that defense counsel need not have access to the file except as the trial court concluded was necessary after its *in camera* review. Specifically, the Court held that under the due process clause the trial court must review the file "to determine whether it contains information that probably would have changed the outcome of his trial." 480 U.S. at 58, 107 S.Ct. at 1002. Otherwise the information did not have to be disclosed to the defendant.

Here, the trial court reviewed the various files *in camera* and approved the editing of names and places. The only question for this court under *Ritchie*, therefore, is whether divulgence of this information to Perry "probably would have changed the outcome of [Perry's] trial." We have examined the unedited materials and, although they include reference to a variety of people of varying degrees of prominence, we cannot say that the information "probably would have changed the outcome" of the trial. Therefore, under *Ritchie*, we find no violation of the due process clause of the United States Constitution.

Perry also argues that the editing violated his rights under M.R.Crim.P. 16, the due process clause of the Maine Constitution, and the confrontation and compulsory process clauses of both the sixth amendment to the United States Constitution and article 1, § 6 of the Maine Constitution. M.R. Crim.P. 16 vests the trial court with broad discretionary power in resolving alleged discovery violations. *See* M.R.Crim.P. 16(c) and (d). We find no abuse of discretion regarding the rulings of the Superior Court here. With respect to Perry's state due process argument, we have previously announced that the Maine Constitution declares identical concepts of due process to the United States Constitution, *Penobscot Area Hous. Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24 n. 9 (Me.1981). Perry has not pointed us to anything in the language or history of the Maine due process clause to justify departing from that statement here, and our holding on the Federal due process issue therefore determines the state issue as well. The United States Supreme Court in *Ritchie* ruled that the confrontation and compulsory process clauses of the United States Constitution are satisfied by the *in camera* review implemented by the Superior Court here. The language in our own clauses is exactly the same as that in the Federal Constitution, and Perry has not demonstrated why it should produce a different result.

■ Perry contends next that he was entitled to see DHS's psychiatric evaluation of the victim. He has failed to show on the record that the evaluation was made in connection with his criminal case, however (it was apparently prepared in connection with separate adoption proceedings undertaken by DHS), and he therefore is not entitled to the evaluation under M.R.Crim. P. 16(b)(2)(B) (disclosure of "any reports or statements of experts made in connection with the *particular* case") (emphasis supplied). Moreover, he has failed to take any steps to have the report made part of the record on this appeal. We are therefore in no position to evaluate whether the report would even be of any utility.

■ Perry's argument that a new trial is required because of the victim's allegedly tainted identification of him in open court may be dealt with summarily. Not only did he fail to move to suppress the victim's identification, but there is also no evidence that she was ever shown a photographic lineup that included him in it. There is no obvious error. M.R.Crim.P. 52(b); M.R. Evid. 103(d).

The indictment alleging that Perry had committed an act of gross sexual misconduct with the victim in April of 1983 was handed down February 2, 1987. There was testimony in the case that the sexual abuse continued until the victim's father moved away in August or September of 1983. Clearly, then, there was adequate evidence to support a jury verdict that the illegal activity occurred within the six year statute of limitations. 17–A M.R.S.A. § 8(2)(A) (1983 & Supp.1988).

Perry's argument that the State failed to prove (because of the victim's terminology) that a sexual act occurred is frivolous.

■ Finally, Perry attempted to introduce testimony through a detective that another individual named Peter who was also known to the family had told the detective in June, 1987 that he had a pierced ear and wore an earring during the period from 1978 through 1979 and subsequently. (The victim testified at one point that her assailant had a pierced ear and wore an earring whereas the evidence showed that Perry did not have a pierced ear.) Although this testimony was clearly hearsay, Perry attempted to introduce it under the M.R.Evid. 803(3) exception as a "statement of the declarant's then existing ... physical condition." Rule 803(3) does not apply, however, because Perry was not offering the testimony for this other Peter's *then existing* (at the time of the interview) physical condition but for his physical condition at a different time—when the sexual abuse in question occurred and when the other Peter lived in Bangor. There was therefore no error in excluding the testimony. (Equivalent evidence was introduced in any event when another individual was permitted to testify concerning the other Peter's pierced ear and wearing of an earring.)

The entry is:

Judgment affirmed.