STATE of Maine

v.

Bruce HUTCHINSON.

Supreme Judicial Court of Maine.

Argued Sept. 5, 1991.
Decided Oct. 17, 1991.

Michael Cantara, Dist. Atty., David Gregory (orally), of counsel, Alfred, for plaintiff.

David Severance (orally), Kezar Falls, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

Defendant Bruce Hutchinson appeals his conviction and sentence on two counts of gross sexual misconduct, 17-A M.R.S.A. § 253 (Supp.1985), following a jury trial in the Superior Court (York County, *Brodrick, J.*). On appeal of his conviction, Hutchinson argues that the trial court erroneously admitted statements made by him to the police while in custody and erred in denying him access to portions of the Department of Human Services records that allegedly involved defendant's activities. On appeal of his sentence, Hutchinson argues that the sentencing justice based his sentence on improper factors. We reject all of his contentions.

Hutchinson was convicted on two counts of gross sexual misconduct for incidents that occurred in Sanford in 1988 and involved two children, aged 10 and 5 at the time. By uncontroverted evidence at trial, the victims had been sexually abused over a period of years. Both girls had named as perpetrators three male family members, including defendant and his nephew Jimmy.[1]

## I.

### *Appeal of Conviction*

A. Admissibility of Police Station Statements

Acting on the basis of a warrant, Sanford police officers arrested defendant and transported him to the Sanford Police Department. Once at the police station, the officers informed defendant of the charges against him and Detective Amy Loranger interviewed him. Defendant was alone with Loranger during the interview. He was not handcuffed and sat three to four feet away from her. Loranger made no promises or threats to defendant, read him his rights as required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and explained to him the meaning of those rights. Loranger provided examples and asked defendant to repeat to her what each particular right meant; after one silent response she rephrased its meaning.

At the end of her explanation, Loranger asked defendant, "Do you understand all of your rights?" and he replied, "Yeah." She then asked, "Do you think that you might want to talk to me about what this is all about?" Defendant responded, "Some." He was then informed that both victims had alleged that he had sexually abused them and that there was medical evidence against him. Defendant denied that he had ever engaged either victim in sexual activity, denied any knowledge of sexual abuse of the girls, and stated that he did not know why either girl would so accuse him.

Defendant was then taken to a processing room where at least one police officer stayed with him at all times. Defendant testified that the police told him he "was going to go into a lie detector" and that he'd better keep thinking about what he was saying. The police officers could not recall anything being said to defendant about a polygraph. Both officers agreed that the only thing of substance said to defendant regarding the charges against him was that he should tell the truth because "people generally feel better if they tell the truth." Defendant testified that he was also told that he should tell the truth "so that things could be cleared up, taken care of." Thereafter, defendant indicated that he wished to speak again with Detective Loranger.

Defendant was taken back to Loranger's office, at which time she reminded him of his rights. She said, "You remember that you don't have to talk to me if you don't want to, okay?" and he responded, "Yep." While there, defendant made two inculpatory statements that were admitted in evidence at trial. On October 26, 1989, defendant filed a motion to suppress those statements on the ground that they "were ob-

---

1. *See State v. Hutchinson*, 593 A.2d 666 (Me. 1991).

tained as the result of threats and coercion" and thus deprived defendant of his Fifth and Fourteenth Amendment rights under the U.S. Constitution. At the suppression hearing defendant testified that he made the statements because he "figured it might get [him] off or something." When asked whether he thought he would get off by admitting he had sex with a six-year-old, defendant answered, "Before, yeah."

### 1. Voluntariness

■ In defendant's challenge to the trial court's refusal to suppress his police station statements, we first review for clear error the motion justice's express finding as a fact, beyond a reasonable doubt, that defendant made his statements voluntarily. *See State v. Birmingham,* 527 A.2d 759, 761 (Me.1987). We find no error. At the station the police did not subject defendant to threats or coercion. In fact, defendant twice testified that the police officers were "nice," did not seem angry, and that he was not nervous. Moreover, both at the suppression hearing and at trial defendant testified that he understood that he was not required to speak.

Contrary to defendant's present assertion, the fact that the officers urged him to tell the truth does not negate the voluntariness of his statement. We have recently said: "Neither [a] detective's engaging defendant in banter nor his encouraging defendant to tell the truth constitute[s] the overbearing of the suspect's free will and rational intellect that requires a finding of involuntariness." *State v. Gosselin,* 594 A.2d 1102, 1105 (Me.1991) (citing *State v. Caouette,* 446 A.2d 1120, 1123 (Me.1982); *State v. Theriault,* 425 A.2d 986, 990 (Me. 1981)).

■ Defendant's argument that he believed the officers to be making an implied promise of leniency by telling him that the truth would "clear things up," even if true, is insufficient to controvert the trial court's finding of voluntariness. The precise question is whether a statement made for an illogical reason requires a finding of involuntariness. The answer is no. While un-

der the Maine Constitution a voluntary statement must be "the result of defendant's exercise of his own free will and rational intellect," *State v. Caouette,* 446 A.2d at 1123, the very reason the present defendant spoke was to "put himself in a better position." He clearly considered whether speaking would be in his best interest, but he was simply wrong in his conclusion. A wrong conclusion does not imply that no thought process occurred. To be voluntary, a decision need not be wise. Defendant establishes no error, let alone clear error, in the trial court's finding of voluntariness.

### 2. Sufficiency of *Miranda* Warnings, and Finding of Waiver

■ Our second inquiry in defendant's challenge to the trial court's refusal to suppress his police station statements is whether defendant knowingly and voluntarily waived his *Miranda* rights, particularly his right to counsel. The court discussed at length why it found that at the time of his statements defendant fully understood that he did not have to speak and chose to waive that right. The court also found that "all the other rights were not only given according to *Miranda,* but were given three different ways and explained in great detail and waived." There is ample evidence in the record to support those findings. Defendant also argues that he invoked his right to remain silent and that the officers' further questioning was improper. The motion justice's implicit finding to the contrary is well supported by the record. Defendant establishes no clear error in the justice's findings of fact that the *Miranda* warnings were given in full and that defendant waived his *Miranda* rights.

### B. Denial of Access to DHS Records

Defendant filed a pretrial motion to compel discovery of "[c]opies of all reports connected with all activities and protective custody cases being maintained by the State Department of Human Services relative to the alleged victims in this case." After an *in camera* inspection of the DHS file, the Superior Court entered an order

stating that "[t]here is no exculpatory evidence in this file from Mr. Hutchinson's point of view.... Therefore, this DHS file will remain sealed and will not be shown to either the State or the Defense." On appeal defendant challenges this order as violative of his due process rights under the Sixth Amendment to the United States Constitution and Article I, section 6, of the Maine Constitution. We can find no error in the trial court's denial of defendant's motion to compel discovery of those records.

■ DHS records are made confidential by 22 M.R.S.A. § 4008 (Pamph.1990) but may be disclosed to "[a] court on its finding that access ... may be necessary for the determination of any issue before [it]...." *Id.* at (3)(B). In *State v. Perry*, 552 A.2d 545 (Me.1989), we considered a similar motion to compel discovery of DHS records by a criminal defendant. After an *in camera* inspection, the trial court had also denied that motion. Here, as in *Perry*, the only question for this court is whether divulgence of the information in the DHS files "probably would have changed the outcome of [Hutchinson's] trial." *Id.* at 547.[2]

We have examined the DHS records. Since our examination confirms the trial court's conclusion that the records do not contain any information that is exculpatory to defendant, his access to the DHS records certainly would not have changed the outcome of his trial. Defendant fails to establish any ground for vacating his conviction.

## II.

### *Appeal of Sentence*

■ Defendant challenges his sentence on three different grounds. First, he argues that the sentencing court improperly considered a presentence investigation report and forensic evaluation that contained references to the DHS records that were previously sealed. The State correctly notes that those records, once sealed, remained in control of the court and could not have been reviewed by anyone in preparing a presentence report. The State stated that any DHS records to which the report referred were already in defendant's possession. Defendant has not presented any basis for us to conclude otherwise.

■ Second, defendant argues that it was improper for the court to say, in referring to defendant's crime, that "it was really rape." The sentencing court, however, not only may consider the nature of the offense, it must do so. "The maximum sentence in a given case should, in the first instance, be determined by a consideration of the particular nature and seriousness of the offense rather than by a consideration of the circumstances of the offender." *State v. Hallowell*, 577 A.2d 778, 781 (Me. 1990). Likewise, on review of sentence this court "is authorized to consider ... [t]he propriety of the sentence, having regard to the nature of the offense...." 15 M.R.S.A. § 2155(1) (Supp.1990).[3] Since the

2. *State v. Perry*, 552 A.2d 545 (Me.1989), adopted this due process standard as laid out in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Ritchie* the Pennsylvania trial court, without conducting an *in camera* inspection, acting pursuant to a statute also making confidential all records of a child protection agency, had denied the defendant access to an agency record that he felt might contain exculpatory and impeaching evidence. The Supreme Court held that the withholding of access to those records violated the defendant's due process rights, by which "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Ritchie*, 480 U.S. at 57, 107 S.Ct. at 1001 (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny). *Ritchie* thus an-

nounced that under progeny of *Brady* that define the term "material," *see United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), the defendant was entitled to have the record "reviewed by the trial court [on remand] to determine whether it contains information that probably would have changed the outcome of his trial." *Id.* 480 U.S. at 58, 107 S.Ct. at 1002.

It should be noted that in *Perry* we adopted the *Ritchie* standard for use as an appellate standard. Thus, in assessing whether any reversible error occurred in the Superior Court's denial of access to the DHS records, we use the standard in the same way as it was used in *Ritchie* by the trial court on remand from the Supreme Court.

3. P.L.1991, ch. 525, § 2 (effective June 30, 1991), among other things, amended the lan-

testimony of one victim clearly established that the offense committed against her met all the elements of rape, the court properly noted the particularly intrusive manner in which defendant had committed the crime of gross sexual misconduct of which he was convicted. Moreover, "[a] sentencing justice is accorded wide discretion when determining what sources and types of information he will consider when imposing sentence ... [as long as] the information considered [is] 'factually reliable.'" *State v. Rosa*, 575 A.2d 727, 730 (Me.1990). Despite the absence of a rape charge, the information that "it was really rape" is factually reliable in that it was based on the testimony of the victim and the sentencing justice's knowledge of the law.

■ Finally, defendant argues that it was error for the court to inquire into the sentence imposed on his nephew, Jimmy Hutchinson. This too is not an abuse of the court's discretion: the court asked the question of counsel and received a factually correct answer. It was also informed of the differing charges and circumstances of Jimmy Hutchinson's case. Jimmy Hutchinson was, however, a related perpetrator convicted for sexually abusing the same victims. In fact, defendant and Jimmy had at times participated jointly in abusing the victims. For purposes of uniformity of sentence, it was proper that the sentencing justice be informed of the sentence another perpetrator had received.

The entry is:

Judgment affirmed.

All concurring.

guage "is authorized to consider," quoted above,    to read "shall consider."