STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                   CR-09-4369

STATE OF MAINE,

v.                                                ORDER

JOHN FRANK,

        Defendant.


Before the court is a motion to suppress the statements made by defendant John Frank at an interview conducted by the Westbrook Police Department on June 5, 2009. Frank is charged with two counts of gross sexual assault based on an alleged incident earlier on June 5.

A hearing was held on Frank's motion on April 27, 2010. The only evidence offered by both the State and the defense at that hearing consisted of a videotape of the June 5, 2009 interview, a Miranda form signed by Frank on June 5, 2009, and a consent to collect biological evidence also signed by Frank on June 5, 2009.

Frank makes four arguments: (1) he contends that the entire interview was custodial and that no Miranda warning was given until approximately the seven-minute mark, requiring a suppression of any statements made prior to the Miranda warning; (2) he contends that the Miranda warning given was inadequate, requiring suppression of the remainder of the interview; (3) he contends that the statements he made at the interview were involuntary because they were made based on an implied promise of leniency; and (4) he contends that consent was not validly obtained for the biological evidence (a cheek swab for DNA) obtained from him at the interview.

1.     Statements Prior to Miranda Warning

If the interview was custodial from the outset, Frank's statements prior to the Miranda warning should be suppressed. This is an issue on which the State has the burden of proof by a preponderance.

On the face of the videotape, the portion of the interview prior to the Miranda warning does not appear custodial. Frank was in a police interview room but his statements indicate that he had come there on his own initiative. However, just before giving the Miranda warnings, shortly after the six-minute mark, Detective Bosse described the setting as "somewhat custodial." Moreover, there was discussion at a later point (at approximately the 65 minute mark) when a detective advised Frank that he is going to be arrested. In that discussion there was a statement to the effect that Frank had been told that he would be arrested even before the interview began by an officer who did not take part in the questioning.

Under those circumstances the court concludes that not only was the interview custodial from the 65 minute mark but that a reasonable person in Frank's position would have believed that he was effectively in custody at the very outset. Frank's statements prior to the Miranda warning are therefore suppressed.

2.     Miranda warning

Frank was given a Miranda warning at approximately the seven-minute mark. That warning advised him of his right to a lawyer, advised him that anything he said could and would be used against him in court, advised him that he had a right to consult a lawyer before answering any questions, advised him that a lawyer would be provided free if he could not afford a lawyer, and advised him that if he decided to

2

answer questions he had the right to stop answering at any time until he could talk to a lawyer. In each case Frank stated that he understood.

Frank's challenge to the Miranda warning is that Detective Bosse, at the conclusion of the Miranda warning, asked whether, having all those rights in mind, Frank wanted "to go ahead and get this cleared up." Frank answered yes. He was not asked the more traditional question – whether with all those rights in mind, he wished to answer questions at this time.

Based on its review of the videotape and the totality of the circumstances, the court finds that Frank's waiver of his Miranda rights was not vitiated by Detective Bosse's last question. First, as noted above, Frank was advised that his statements "can and will" be used against him in court. Second, as noted above and as argued by Frank at the suppression hearing, he had already been told that he would be placed under arrest before the interview began. The State has met its burden of proving by a preponderance that Frank was informed of his rights, knew that he was likely to be arrested, and therefore was not lulled into waiving his rights under the misunderstanding that the only purpose of the questioning was to clear things up.

### 3.  Voluntariness

Frank argues that his statements were involuntary because they were given in the context of an implied promise of leniency. In this respect, he relies essentially on one comment by Detective Bosse at approximately the 56-minute mark of the taped interview.

At the 56-minute mark Bosse stated that he thought that in the statements Frank had made thus far, he was "painting himself into a corner" because his story did not make sense. He told Frank that if the evidence showed Frank's story did not make

3

sense, then "you're in some fucking hot water, you know that?" Frank said "yeah". Detective Bosse then told Frank, in substance, that this was why he had to tell the truth, stating, "Come clean with what happened, we'll work the whole thing out."

Considered in isolation, Bosse's statement that "we'll work the whole thing out" could be construed as an ambiguous but implied promise of leniency. Statements elicited by a promise of leniency are not voluntary. *E.g., State v. Tardiff,* 374 A.2d 598, 600 (Me. 1977). However, the court nevertheless concludes that the videotaped interview as a whole demonstrates beyond a reasonable doubt that Frank's statements were voluntary.

First, Detective Bosse never elaborated on what he meant by "working the whole thing out", and Frank never asked what he meant by that. Compared to cases where promises of leniency have been found, *see, e.g., State v. Tardiff,* 374 A.2d at 600 (express promise that if defendant talked about a series of burglaries, he would only be charged with one break in), Bosse's statement was no more than one ambiguous hint of leniency in a two hour and 40 minute interview. All of the many other statements of the detectives in that interview consisted of urging Frank to tell the truth, telling him that his story did not make sense, and asking him whether what really happened was that he had thought the victim would be receptive to his advances. None of those statements constituted any implied promise of leniency. *See State v. Therriault,* 425 A.2d 986, 990 (Me. 1981).

Second, the court finds beyond a reasonable doubt that Bosse's hint of leniency was not the motivating cause of Frank's later admissions that there had been some sexual contact between himself and the victim. *State v. Tardiff,* 374 A.2d at 601 (confession otherwise voluntary is not vitiated by promise of leniency "unless such promise was the motivating cause of the confession"). *See State v. Wood,* 662 A.2d 908,

4

911 (Me. 1995), citing *State v. Hutchinson*, 597 A.2d 1344, 1346 (Me. 1991) (officer's statement that the truth would "clear things up" did not controvert court's finding of voluntariness).

There is no indication on the videotape that Frank picked up on Bosse's statement or understood that statement as a hint or promise of leniency. Moreover, the sequence of events at the interview dispels the possibility that Frank's eventual admissions that there had been sexual contact (which he still contended was consensual) were motivated by Bosse's remark at the 56-minute mark. Before Bosse's remark, Frank had admitted hugging the victim. Shortly after Bosse's statement Frank acknowledged kissing the victim. Neither of those statements, however, indicated that there had been any sexual touching. More than 10 minutes after Bosse's statement – after one of the detectives confirmed that Frank was going to be arrested (tape at approximately one hour five minutes) – Frank made his first admission that some "groping" had occurred. No further hints or promises of leniency, ambiguous or otherwise, had been made. The intervening statement to Frank that Frank was going to be arrested dispelled any possibility that his admission of groping was elicited by Bosse's statement at the 56 minute mark, even assuming Frank had interpreted Bosse's statement as a hinted offer of leniency. Moreover, Frank's groping admission also came after Detective Bosse tried a different tack in the interview (asking what reason the victim had to accuse Frank if her story was not true.)

Frank subsequently admitted that he had been present in the bathroom while the victim had been in the shower, but that admission came twenty minutes after his groping admission. In that interval there had been no further statements by the detectives that could be interpreted as even hints of leniency. Nor were there any further statements that could be interpreted as hints of leniency when Frank later

5

acknowledged that he had touched the victim's vagina (at approximately one hour and 34 minutes).

In sum, there was at most an ambiguous hint of leniency in this case and that hint (if it was even noticed by Frank) was not the motivating cause of his subsequent admissions. The interview as a whole establishes that Frank's statements did not result from any promise of leniency but instead from Frank's dawning awareness that his initial story did not hold up, from the officers' urgings to tell the truth, and ultimately from Frank's own statement that he had "to get this off my chest" (tape at approximately one hour and 27 minutes).

The court also finds that Frank's statements were made after he had been given a Miranda warning, that they resulted from the free choice of a rational mind, that they were not elicited by coercive police conduct, and that under all the circumstances the admission of those statements at trial would be fundamentally fair. Accordingly, the court concludes Frank's statements were voluntary under *State v. Coombs*, 1998 ME 1 ¶ 10, 704 A.2d 387, 390-91.

### 4.    Consent to DNA Swab

The videotape reflects that Frank readily agreed when asked if he would give a sample of his DNA (at approximately 55 minutes), that he was advised that he had a right to refuse (at approximately the 61 minute mark), and that he signed a form (which was first read to him), stating that he gave permission for the swab freely, voluntarily, and without any threats or promises made to him. This demonstrates by any standard of proof that Frank consented to the DNA swab.

Frank has not argued that there were any specific infirmities with respect to his consent for a DNA swab. His argument is that the swab, like his statements, was

6

elicited by the hint of leniency contained in Bosse's statement at the 56-minute mark. That argument fails for the same reason the court has found against him on voluntariness.

The entry shall be:

Defendant's motion to suppress is granted with respect to any statements defendant made at the June 5, 2009 interview up to the point when Detective Bosse began to recite a Miranda warning. In all other respects, defendant's motion to suppress is denied.

DATED:    May 3  , 2010

Thomas D. Warren
Justice, Superior Court

7

STATE OF MAINE
  vs
JOHN E FRANK
446 BUXTON RD
SACO ME 04072

A True Copy
Attest: *Sally A Bourget*
Clerk of Courts

Docket No  CUMCD-CR-2009-04369

**DOCKET RECORD**

DOB: 02/10/1984
Attorney: LUKE RIOUX                State's Attorney: STEPHANIE ANDERSON
    FAIRFIELD & ASSOCIATES PA
    75 PEARL STREET SUITE 430
    PORTLAND ME 04101
    APPOINTED 06/08/2009

Filing Document: CRIMINAL COMPLAINT            Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 06/08/2009

## Charge(s)

**1   GROSS SEXUAL ASSAULT**                    **06/05/2009 WESTBROOK**
**Seq 4262   17-A   253(1)(A)**        **Class A**
    **YOULAND            / WES**

**2   GROSS SEXUAL ASSAULT**                    **06/05/2009 WESTBROOK**
**Seq 4262   17-A   253(1)(A)**        **Class A**
    **YOULAND            / WES**

## Docket Events:

06/08/2009 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 06/08/2009

06/08/2009 Charge(s): 1,2
        HEARING -  INITIAL APPEARANCE SCHEDULED FOR 06/08/2009 @ 1:00 in Room No.  1

        NOTICE TO PARTIES/COUNSEL
06/09/2009 Charge(s): 1,2
        HEARING -  INITIAL APPEARANCE HELD ON 06/08/2009 @ 1:00 in Room No.  1
        PAUL E EGGERT , JUDGE
        3301
06/09/2009 Charge(s): 1,2
        PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 06/08/2009 @ 1:00 in Room No.  1
        PAUL E EGGERT , JUDGE
        3301
06/09/2009 Charge(s): 1,2
        HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 08/13/2009 @ 10:30 in Room No.  7

06/09/2009 Charge(s): 1,2
        TRIAL -  JURY TRIAL SCHEDULED FOR 09/08/2009 @ 8:30 in Room No.  11

        NOTICE TO PARTIES/COUNSEL
06/10/2009 BAIL BOND - $50,000.00 CASH BAIL BOND SET BY COURT ON 06/08/2009 @ 1:00 in Room No.  1
        PAUL E EGGERT , JUDGE
        $100,000 S/S OR $50,000 CSH OR IN THE ALT A $10,000 S/S AND MPT SERVICE    CONTRACT.
        W/CONDS
06/10/2009 Charge(s): 1,2
        MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 06/08/2009

06/10/2009 Charge(s): 1,2
        MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 06/08/2009
        PAUL E EGGERT , JUDGE
        Attorney: LUKE RIOUX
        COPY TO PARTIES/COUNSEL
06/10/2009 Party(s): JOHN E FRANK
        ATTORNEY - APPOINTED ORDERED ON 06/08/2009


        Attorney: LUKE RIOUX
06/22/2009 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 06/19/2009


06/22/2009 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 06/24/2009 @ 1:00 in Room No. 1


        NOTICE TO PARTIES/COUNSEL
06/22/2009 HEARING - MOTION TO AMEND BAIL NOTICE SENT ON 06/22/2009


06/23/2009 OTHER FILING - PRETRIAL SERVICES CONTRACT FILED ON 06/23/2009


06/25/2009 HEARING - MOTION TO AMEND BAIL HELD ON 06/24/2009
        ROLAND A COLE , JUSTICE
06/25/2009 MOTION - MOTION TO AMEND BAIL GRANTED ON 06/24/2009
        ROLAND A COLE , JUSTICE
        COPY TO PARTIES/COUNSEL
06/25/2009 OTHER FILING - PRETRIAL SERVICES CONTRACT APPROVED ON 06/24/2009
        ROLAND A COLE , JUSTICE
06/25/2009 BAIL BOND - CASH BAIL BOND SET BY COURT ON 06/24/2009
        ROLAND A COLE , JUSTICE
        $2,500. W/ MPS CONTRACT & CONDS.
06/26/2009 BAIL BOND - $2,500.00 CASH BAIL BOND FILED ON 06/26/2009


        Bail Receipt Type: CR
        Bail Amt: $2,500
                                Receipt Type: CK
        Date Bailed: 06/25/2009    Prvdr Name: TERRY REYNOLDS
                                Rtrn Name: TERRY REYNOLDS
        #636
07/06/2009 Charge(s): 1,2
        TRIAL - JURY TRIAL CONTINUED ON 07/06/2009


        9-8-09 IS A STATE SHUTDOWN DAY. CASE RESCHEDULED FOR TRIAL EXP 9-14-09
07/06/2009 Charge(s): 1,2
        TRIAL - JURY TRIAL SCHEDULED FOR 09/14/2009 @ 8:30 in Room No. 11


        NOTICE TO PARTIES/COUNSEL
07/13/2009 Charge(s): 1,2
        SUPPLEMENTAL FILING - INDICTMENT FILED ON 07/10/2009


07/13/2009 Charge(s): 1,2
        HEARING - ARRAIGNMENT SCHEDULED FOR 08/13/2009 @ 10:30 in Room No. 7


07/13/2009 Charge(s): 1,2
        HEARING - ARRAIGNMENT NOTICE SENT ON 07/13/2009

07/20/2009 MOTION -    MOTION FOR FUNDS FILED BY DEFENDANT ON 07/16/2009


07/20/2009 MOTION -    MOTION FOR FUNDS GRANTED ON 07/20/2009
            ROLAND A COLE , JUSTICE
            COPY TO PARTIES/COUNSEL                                        TOTAL AMOUNT
            GRANTED $500
07/22/2009 Charge(s): 1,2
            HEARING -   DISPOSITIONAL CONFERENCE NOTICE SENT ON 07/22/2009


08/13/2009 Charge(s): 1,2
            HEARING -   ARRAIGNMENT CONTINUED ON 08/13/2009


08/13/2009 Charge(s): 1,2
            HEARING -   DISPOSITIONAL CONFERENCE CONTINUED ON 08/13/2009
            ROLAND A COLE , JUSTICE
08/17/2009 Charge(s): 1,2
            TRIAL -   JURY TRIAL NOT HELD ON 08/17/2009


08/17/2009 TRIAL -   JURY TRIAL SCHEDULED FOR 01/19/2010 @ 8:30 in Room No.   11


            NOTICE TO PARTIES/COUNSEL
08/17/2009 HEARING -   DISPOSITIONAL CONFERENCE SCHEDULED FOR 12/17/2009 @ 9:30 in Room No.   7


09/10/2009 MOTION -   MOTION TO AMEND BAIL FILED BY DEFENDANT ON 09/10/2009


09/11/2009 MOTION -   MOTION TO AMEND BAIL GRANTED ON 09/10/2009
            ROLAND A COLE , JUSTICE
            COPY TO PARTIES/COUNSEL
09/15/2009 BAIL BOND -   CASH BAIL BOND AMENDED ON 09/15/2009


            Date Bailed: 06/25/2009
            #636
10/21/2009 TRIAL -   JURY TRIAL NOT HELD ON 10/21/2009


            SCHEDULED CHANGED IN UCD
10/22/2009 Charge(s): 1,2
            TRIAL -   JURY TRIAL SCHEDULED FOR 01/25/2010 @ 8:30 in Room No.   11


            NOTICE TO PARTIES/COUNSEL
10/22/2009 Charge(s): 1,2
            TRIAL -   JURY TRIAL NOTICE SENT ON 10/22/2009


11/30/2009 HEARING -   DISPOSITIONAL CONFERENCE NOTICE SENT ON 11/30/2009


12/18/2009 Charge(s): 1,2
            TRIAL -   JURY TRIAL CONTINUED ON 12/17/2009
            MARYGAY  KENNEDY , JUDGE
12/18/2009 HEARING -   DISPOSITIONAL CONFERENCE CONTINUED ON 12/17/2009
            MARYGAY  KENNEDY , JUDGE
12/18/2009 HEARING -   DISPOSITIONAL CONFERENCE SCHEDULED FOR 02/04/2010 @ 9:30 in Room No.   7


12/18/2009 HEARING -   DISPOSITIONAL CONFERENCE NOTICE SENT ON 01/08/2010

TERRY   VALCOURT , ASSISTANT CLERK-E

12/18/2009 TRIAL -   JURY TRIAL SCHEDULED FOR 03/08/2010 @ 8:30 in Room No.   11

NOTICE TO PARTIES/COUNSEL

12/18/2009 TRIAL -   JURY TRIAL NOTICE SENT ON 12/18/2009

12/30/2009 MOTION -   MOTION FOR FUNDS FILED BY DEFENDANT ON 12/29/2009

Attorney:  LUKE RIOUX

PI FUNDS

12/30/2009 MOTION -   MOTION FOR FUNDS GRANTED ON 12/30/2009

JOYCE A WHEELER , JUSTICE

COPY TO PARTIES/COUNSEL                                              TOTAL: 200.00

25. PER HOUR

PI MUST BE LICENSED

STATEMENT OR BILL MUST BE ITEMIZED.

02/04/2010 TRIAL -   JURY TRIAL NOT HELD ON 02/04/2010

JURY TRIAL DATE MOVED BASED ON DISP CONF HELD 2/4

02/04/2010 HEARING -   DISPOSITIONAL CONFERENCE HELD ON 02/04/2010

JEFF  MOSKOWITZ , JUDGE

Attorney:  LUKE RIOUX

DA:  JENNIFER NORBERT

DISP CONF HELD.  THERE ARE DISCOVERY ISSUES WHICH RESULT IN THE TRIAL BEING RESCHEDULED

FOR 3/22.  NO ADDITIONAL DISP CONF DATE.

02/04/2010 TRIAL -   JURY TRIAL SCHEDULED FOR 03/22/2010 @ 8:30 in Room No.   11

NOTICE TO PARTIES/COUNSEL

02/04/2010 TRIAL -   JURY TRIAL NOTICE SENT ON 02/04/2010

02/08/2010 Charge(s): 1,2

MOTION -   MOTION TO SUPPRESS FILED BY DEFENDANT ON 02/08/2010

02/08/2010 Charge(s): 1,2

MOTION -   MOTION TO SUPPRESS FILED BY DEFENDANT ON 02/08/2010

02/08/2010 HEARING -   MOTION TO SUPPRESS SCHEDULED FOR 02/23/2010 @ 1:00 in Room No.   8

NOTICE  TO PARTIES/COUNSEL

02/08/2010 HEARING -   MOTION TO SUPPRESS NOTICE SENT ON 02/08/2010

02/24/2010 HEARING -   MOTION TO SUPPRESS CONTINUED ON 02/23/2010

THOMAS D WARREN , JUSTICE

JUDGE WILL ADVISE OF DATE AND REVIEW TAPES

03/18/2010 TRIAL -   JURY TRIAL CONTINUED ON 02/23/2010

THOMAS D WARREN , JUSTICE

03/18/2010 CASE STATUS -   CASE FILE LOCATION ON 03/18/2010

CASE IS WITH

MARIAH

03/24/2010 NOTE -   OTHER CASE NOTE ENTERED ON 03/24/2010

ROLAND  BEAUDOIN , JUDGE

PI BILL FOR 200.00 PER COURT ORDER SENT TO AOC.

03/26/2010 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 04/27/2010 @ 1:00 in Room No. 8
        THOMAS D WARREN , JUSTICE
        NOTICE TO PARTIES/COUNSEL
03/26/2010 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 03/26/2010

04/05/2010 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 03/19/2010

        Attorney: LUKE RIOUX
04/06/2010 MOTION - MOTION FOR FUNDS GRANTED ON 04/05/2010
        ROLAND BEAUDOIN , JUDGE
        COPY TO PARTIES/COUNSEL                                          TOTAL: 300.00
04/23/2010 CASE STATUS - CASE FILE RETURNED ON 04/23/2010

04/27/2010 HEARING - MOTION TO SUPPRESS HELD ON 04/27/2010
        THOMAS D WARREN , JUSTICE
        Attorney: LUKE RIOUX
        DA: JENNIFER NORBERT
        Defendant Present in Court

        HEARING HELD, NO TESTIMONY, ORAL ARGUMENTS BY DEF COUNSEL AND ADA. EXHIBITSCOPY OF MIRANDA
        WAIVER, CONSENT TO TAKE BIOLOGICAL EVIDENCE, VIDEO.        TAPE #1764, INDEX 2826. MATTER
        TAKEN UNDER ADVISEMENT. JUSTICE WARREN HAS FILE AND EXHIBITS.   WHEN DECISION RECEIVED,
        SET FOR TRIAL IN JUNE.
04/27/2010 CASE STATUS - CASE FILE LOCATION ON 04/27/2010

        FILE W/JUSTICE WARREN
05/07/2010 CASE STATUS - CASE FILE RETURNED ON 05/07/2010

05/07/2010 Charge(s): 1,2
        MOTION - MOTION TO SUPPRESS GRANTED ON 05/03/2010
        THOMAS D WARREN , JUSTICE
        COPY TO PARTIES/COUNSEL

                                                DEFENDANT'S MOTION TO SUPPRESS
        IS GRANTED WITH RESPECT TO ANY STATEMENTS DEFENDANT MADE AT THE JUNE 5, 2009 INTERVIEW UP
        TO THE POINT WHEN DETECTIVE BOSSE BEGAN TO RECITE A MIRANDA WARNING. IN ALL OTHER
        RESPECTS, DEFENDANT'S MOTION TO SUPPRESS IS DENIED
05/07/2010 Charge(s): 1,2
        MOTION - MOTION TO SUPPRESS DENIED ON 05/03/2010
        THOMAS D WARREN , JUSTICE
        COPY TO PARTIES/COUNSEL

                                                DEFENDANT'S MOTION TO SUPPRESS
        IS GRANTED WITH RESPECT TO ANY STATEMENTS DEFENDANT MADE AT THE JUNE 5, 2009 INTERVIEW UP
        TO THE POINT WHEN DETECTIVE BOSSE BEGAN TO RECITE A MIRANDA WARNING. IN ALL OTHER
        RESPECTS, DEFENDANT'S MOTION TO SUPPRESS IS DENIED
05/07/2010 ORDER - COURT ORDER ENTERED ON 05/04/2010
        THOMAS D WARREN , JUSTICE
        MOTION TO SUPPRESS

A TRUE COPY
ATTEST: _____
                Clerk