STATE of Maine

v.

**Roger L. SMITH.**

Supreme Judicial Court of Maine.

Argued Oct. 1, 1992.

Decided Oct. 26, 1992.

Michael E. Carpenter, Atty. Gen. and Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for the State.

Stuart W. Tisdale, Jr. (orally), Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Roger L. Smith appeals from his conviction of intentional or knowing murder and aggravated assault in the Superior Court (Knox County, *Kravchuk, J.*). Smith contends that the trial justice erred in not excluding statements made by Smith to a state police detective during interviews subsequent to the day upon which Smith's state prison cellmate, Larry Richardson, was found hanging in his cell; challenges counts I and II of the indictment as mutually exclusive; and claims the conduct of the prison authorities offends fundamental fairness. We affirm the conviction.

## I.

### SUPPRESSION

Smith advances three arguments for the suppression of the statements. First, the statements were not voluntary; second, that the purported waiver by Smith of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was not knowing, intelligent or voluntary, and therefore the statements should be suppressed; and third, that due to the unreasonably long delay in formally charging Smith, the police created an opportunity to extract the incriminating statements in violation of Smith's sixth amendment right to counsel.

### A.

### VOLUNTARINESS

■ In considering Smith's contention that his statements were not voluntary, we first review for clear error the trial justice's express finding of fact that beyond a reasonable doubt Smith made the statements at issue voluntarily. *See State v. Hutchinson*, 597 A.2d 1344, 1346 (1991). The State bears the burden of establishing the voluntariness of a confession or statement by "the strict standard [of] proof beyond a reasonable doubt." *State v. Gosselin*, 594 A.2d 1102, 1105 (Me.1991). "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and, if under all the circumstances its admission would be fundamentally fair." *State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983). In other words, it must be established that it is the result of defendant's exercise of his or her own free will and rational intellect. *State v. Caouette*, 446 A.2d 1120, 1123 (Me.1982). A trial court should determine whether a statement is voluntary by considering the totality of the circumstances. *See Caouette*, 446 A.2d at 1124. "Mere admonitions or exhortations to tell the truth will not by themselves, render a confession involuntary." *State v. Knights*, 482 A.2d 436, 442 n. 4 (1984).

■ Smith's essential contention is that the very conditions of his incarceration were coercive. He contends that the record reflects that the imposition of "highly deprivatory" conditions of confinement facilitated the interrogations. Smith also argues that the fact that he had been placed on "suicide watch" by the prison's own doctors gives rise to the clear implication that Smith was not rational. Smith notes that during the March 14th interrogation, when he finally stated that he kicked Richardson's legs out from under him, he was sobbing.

Such facts, however, do not mandate that the motion justice find that a statement or

confession was involuntary. On appeal, we will not disturb a trial court's determination that the state has met its burden if there is evidence in the record that rationally supports its conclusion. *State v. Caouette,* 446 A.2d 1120, 1123 (Me.1982). Our review is for clear error. *See State v. Hutchinson,* 597 A.2d 1344, 1346 (1991).

The trial court in ruling on Smith's motion to suppress indicated its satisfaction "that the State has proven beyond a reasonable doubt the statements made by Roger Smith, both oral and written, were voluntary." This conclusion was not clearly erroneous.

### B.

### MIRANDA WAIVER

■ Smith next argues that the purported waiver of his *Miranda* rights was invalid in the light of expert testimony to the effect that Smith had a low I.Q. and the fact that Smith was repeatedly unable to explain in his own words what the *Miranda* warnings mean. The trial court's finding that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights will be upheld if the record provides rational support for the justice's conclusion. *See State v. Addington,* 518 A.2d 449, 452 (Me.1986); *State v. Knights,* 482 A.2d 436, 440 (Me.1984).

In denying Smith's motion to suppress, the trial court noted that although there was expert testimony regarding Smith's severely limited ability to understand words, the record suggested and the court found that in the context of the totality of the circumstances including three taped interviews and the written correspondence drafted by Smith, that Smith did understand the *Miranda* concept. The trial court's conclusion is not clearly erroneous in that it has rational ground in the record.

### C.

### DELAY

■ Smith was indicted approximately three months after his cellmate's death. Counsel was not appointed for the defen-

dant until well after the tape recorded interrogations. Smith argues this delay was completely unnecessary and only occurred because the authorities already had him incarcerated in a situation where they could interrogate him while he was uncounseled and in an extremely vulnerable mental state.

This court has noted that:

The Sixth Amendment guarantees the assistance of counsel at trial and at "earlier, critical stages in the criminal justice process where the results might well settle the accused's fate and reduce the trial to a mere formality. *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (citations and quotations omitted). "Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him...." *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). Moreover, after the initiation of formal charges, the Sixth Amendment guarantees the accused "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton,* 474 U.S. at 176, 106 S.Ct. at 487.

*State v. Rose,* 604 A.2d 24, 26 (Me.1992).

Richardson's body was discovered in the early morning on March 6th. A state police officer first questioned Smith, without the benefit of *Miranda* warnings, later that same day. The next interrogation, with *Miranda* warnings, occurred on March 9th. While Smith admitted many incriminating facts at this interview, he did not admit to murdering Richardson. The admission, that he kicked Richardson's legs out from beneath him, occurred on March 14th, eight days after Richardson's body was discovered. The damaging nature of this admission is apparent.

The Supreme Court has already considered and rejected the claim that a prison inmate's sixth amendment right to counsel attaches prior to the initiation of formal criminal proceedings against the inmate,

e.g. an indictment. *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The fifth amendment requires the dismissal of an indictment only if the defendant can prove the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense. *Id.* at 191, 104 S.Ct. at 2299. The record is devoid of any evidence to support the defendant's claim that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him, or that it caused him actual prejudice in presenting his defense.

## II.

## DUE PROCESS

■ Smith was indicted under two different sections of 17–A M.R.S.A. § 201 (1983).[1] First, the prosecution alleged that Smith had intentionally or knowingly caused the death of Richardson in violation of 17–A M.R.S.A. § 201(1)(A) (intentional or knowing murder). Second, the prosecution alleged that Smith intentionally or knowingly caused Richardson to commit suicide by the use of force, duress or deception. 17–A M.R.S.A. § 201(1)(C) (causing suicide murder).

Prior to trial, Smith challenged this indictment by a motion to dismiss on the grounds that Counts I and II of the indictment were mutually exclusive and in violation of the defendant's right to due process of law and the constitutional proscription against double jeopardy, and sought a prosecutorial election between the counts. The court refused to dismiss the indictment or to require prosecutorial election at that time but made clear that the defendant's motion raised serious issues and that the defendant would be allowed to renew his motion at a later time. The motion was never renewed and therefore was not pre-

served. We conclude that there was no obvious error in the court's declining to compel the State to elect.

## III.

## FUNDAMENTAL FAIRNESS

■ Smith finally argues that the trial court erred in failing to dismiss the case against him because the "conduct of the police, i.e., conduct of the prison guards, created a crime where none would otherwise have taken place and did so in a manner which offends the fundamental fairness inherent in due process principles." When government investigators are enmeshed in the criminal activity for which the defendant is prosecuted, the prosecution of that defendant is repugnant to our concept of criminal justice. *United States v. Russell*, 411 U.S. 423, 428, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973). This defense, however, is available only when the "conduct of law enforcement agents is so outrageous due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction." *Id.* at 431–32, 93 S.Ct. at 1643. The alleged failure of the prison guards to take affirmative action to protect Smith's cellmate did not make the guards so enmeshed in his murder that it would be repugnant to our concept of criminal justice to convict Smith for the killing. There is no evidence that the prison guards instigated the murder, or that they took any part in the killing. Although Smith's allegations are extremely troubling, they do not merit insulating Smith from prosecution.

The entry is:

Judgment affirmed.

All concurring.

---

**1.** 17–A M.R.S.A. § 201 (1983) provides:

1. A person is guilty of murder if:

A. He intentionally or knowingly causes the death of another human being;

B. He engages in conduct which manifests a depraved indifference to the value of human life and which in fact causes the death of another human being; or

C. He intentionally or knowingly causes another human being to commit suicide by the use of force, duress or deception.

*Id.*