DONALD L. [illegible]
LA[illegible]

STATE OF MAINE
PENOBSCOT COUNTY

MAY 25 2004

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-03-727
A.M.W— PC//-4/ [illegible]

STATE OF MAINE, )
)
)
)
Plaintiff )
)
v. )
)
)
JUSTIN J. ROUSE, )
)
)
Defendant )
)
)
_____ )

**DECISION ON MOTION
TO SUPRESS EVIDENCE**

FILED & ENTERED
SUPERIOR COURT
APR 0 1 2004
PENOBSCOT COUNTY

Pending before this Court is the Defendant's Motion to Suppress Evidence. On December 30, 2003, the Court conducted a testimonial hearing in connection with this motion. Gregory Campbell for the State; Chris Ruge for the Defense.

## FINDINGS OF FACT

Based on the evidence presented at the hearing, the Court makes the following findings of fact. On August 8, 2003, the Defendant was arrested on a probable cause warrant for stealing prescription drugs (Oxycontin) on August 7, 2003 from his Grandfather, Keith Rouse. The Defendant was taken to the Penobscot County Jail where Police Officer Andrew Whitehouse conducted a custodial interrogation.

Officer Whitehouse's interrogation of the Defendant lasted for approximately 45 minutes. Officer Whitehouse began the interview by reading the Defendant his Miranda Rights.[1] The Defendant gave a verbal affirmative response indicating that he understood

---

[1] The Court accepts Officer Whitehouse's testimony that he advised the Defendant that he was a law enforcement officer and that he wanted to ask him some questions, but first he needed to explain the Defendant's rights to him. The Defendant was informed that he had a right to remain silent and that anything he said could and would be used against him in a court of law. The Defendant affirmatively responded that he understood this right. The Defendant was informed that he had an absolute right to the advice of a lawyer before any questioning and to the presence of a lawyer at the jail with him during the questioning. The Defendant affirmatively responded that he understood this right. The Defendant was informed that if he could not afford an attorney, one would be furnished for him for free before any

1

each of his rights provided under Miranda. The Defendant then waived his Miranda rights and told Officer Whitehouse that he was willing to answer his questions at that time. Officer Whitehouse testified that the Defendant appeared to be upset that he was under arrest, but was not out of control, he did not appear to be under the influence of intoxicants and he was coherent. During the interrogation the Defendant confessed to stealing a bottle of prescription drugs (Oxycontin) from his Grandfather, Keith Rouse, while visiting his Grandparent's house. The Defendant also wrote a statement for Officer Whitehouse. The statement was in the form of an apology letter to the Defendant's Grandfather confessing and apologizing for stealing the drugs. A copy of the letter was admitted as State's Exhibit 1. The Defendant did not indicate at any time during the interview that he was unwilling to talk to Officer Whitehouse or that he wanted to discontinue the interview.

Officer Whitehouse also testified that he knew the Defendant was out on bail and supposed to be under house arrest, but did not know an attorney was representing him on the matters relating to his bail. A motion for revocation of Defendant's pre-conviction bail for matters pending in the District Court was also filed on August 8, 2003. A copy of this motion was admitted as Defendant's Exhibit 1. The State and the Defendant have stipulated that the matters pending in District Court are unrelated to the charges involved in this case.

On October 6, 2003, the Defendant was charged by Indictment with Stealing Drugs (Class C), Unlawful Possession of Schedule W Drugs (Class D), and Violation of

---

questioning, if he so desired. The Defendant again affirmatively responded that he understood his right. The Defendant was also informed that if he decided to answer questions now, with or without a lawyer present, he had the right to stop answering at any time or to stop answering until he could speak with a lawyer. Again, the Defendant affirmatively responded that he understood this right.

Condition of Release (Class E). The Defendant filed a motion to suppress the statements he made to Officer Whitehouse during a custodial interrogation on August 8, 2003. A hearing was held on December 30, 2003. The Defendant argues: (1) he did not knowingly or intelligently waive his Fifth and Sixth Amendment rights pursuant to Miranda; (2) his statements were involuntary; and (3) taking him into custody for interrogation violated his Sixth Amendment right to counsel because the State had already instituted an adversarial proceeding in its motion to revoke his pre-conviction bail, which he already had an attorney for; therefore, everything he said during the custodial interrogation violated his Sixth Amendment rights.

## Discussion

### A. Sixth Amendment Right to Counsel

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The United States Supreme Court has held "that once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. McNeil v. Wisconsin, 501 U.S. 171, 175, 115 L. Ed. 2d. 158, 111 S. Ct. 2204 (1991) (citing Michigan v. Jackson, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986)). It is undisputed that at the time the Defendant provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the matters pending in the District Court for which he had been formally charged and released on bail.

The Sixth Amendment right, however, is offense specific. McNeil, 501 U.S. at 175. The Supreme Court has made it clear that this right "cannot be invoked once for all

3

future prosecutions, for it does not attach until a prosecution is commenced, that is 'at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" McNeil, 501 U.S. at 175 (*quoting* United States v. Gouveia, 467 U.S. 180, 188, 81 L. Ed. 2d 146, 104 S. Ct. 2292 (1984) (*quoting* Kirby v. Illinois, 406 U.S. 682, 689, 32 L. Ed. 2d. 411, 92 S. Ct. 1877 (1972)). Not only is the Sixth Amendment right to counsel offense specific, but the Michigan v. Jackson effect of invalidating subsequent waivers in police-initiated interviews is also offense specific.

In addressing the scope of the offense specific nature of the Sixth Amendment, the Supreme Court in Maine v. Moulton, 474 U.S. 159, 179-180, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985) stated:

> The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime.] . . . To exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. . . .

The Supreme Court in Maine v. Moulton concluded, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are of course, admissible at a trial of those offenses." Maine v. Moulton, 474 U.S. at 180, n. 16. Because the Defendant provided the statements at issue here before his Sixth Amendment right to counsel with respect to the theft and possession of Oxycontin charges had been (or even could have been) invoked, that right poses no bar to the admission of the incriminating statements made to Officer Whitehouse in this case.

## B. Fifth Amendment Right to Counsel

The Defendant also relies on the "right to counsel" related to the Fifth Amendment guarantee that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the Supreme Court established a number of "prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." McNeil, 501 U.S. at 176. Miranda did not hold, however, that those rights could not be waived. Miranda recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475.

In Edwards v. Arizona, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), the Supreme Court established a second layer of protections for the Miranda right to counsel: once a suspect asserts this right, not only must the current interrogation cease, but he may not be approached for further interrogation until his counsel is present. McNeil, 501 U.S. at 176-177 (citing Minnick v. Mississippi, 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990)). If the police subsequently initiate an interrogation in the absence of counsel, the defendant's statements are presumed involuntary and thus inadmissible, even where the defendant has voluntarily waived his Miranda rights. McNeil, 501 U.S. at 177. The Edward's rule, is *not* offense specific, once a defendant invokes his Miranda right to counsel for interrogation regarding one offense, he may not be re-approached regarding any offense unless counsel is present. McNeil, 501 U.S. at

5

177 (*citing* Arizona v. Roberson, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988).

The evidence shows the Defendant was properly advised of his Miranda rights by Officer Whitehouse. Officer Whitehouse read to the Defendant, line by line, from the standard card issued by the Attorney General to advise suspects of their constitutional rights. After Officer Whitehouse finished reading the Defendant his rights, he asked the Defendant if he understood his rights, and the Defendant replied that he did and that he was willing to waive his rights. The record clearly establishes that Defendant was properly advised of his rights according to Miranda.[2] The Court finds that the Defendant's waiver met the Miranda requirements.

In consideration of a motion to suppress brought by the Defendant as to matters of admissions or confessions, the State bears the burden of establishing the voluntariness of a confession or statement by the strict standard of proof beyond a reasonable doubt. State v. Smith, 615 A.2d 1162 (Me. 1992). A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all circumstances, its admission would be fundamentally fair. Id. To determine the validity of the Defendant's waiver and his subsequent statements, it is the responsibility of this Court to consider the totality of the circumstances surrounding the interrogation, including the defendant's age, experience, education, background, intelligence, familiarity with the criminal justice system, and his physical and mental condition. United States v. Feyler, 55 F. Supp. 2d 55, 59 (D. Me. 1999) (*citing* Moran v. Burbine, 475 U.S. 412, 421, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986)) (citations omitted).

---

[2] The record does not indicate the Defendant signed a waiver of rights form; however, this does not invalidate the Defendant's waiver. Miranda v. Arizona requires only that a waiver of rights be made voluntarily, knowingly, and intelligently, not that it be made in writing. 384, U.S. at 444.

The Defendant was an adult when he was arrested and this was not his first arrest; he was familiar with the criminal justice system. Defendant does not dispute that Officer Whitehouse read the Miranda warnings to him. The record shows that he stated to Officer Whitehouse that he understood his constitutional rights. Nothing in the record shows that the Defendant's mental condition was weakened after his arrest to any degree recognizable under the law. Whatever stress or anxiety Defendant felt was not greater than that which is experienced by suspects generally when considering their post-arrest alternatives. Advising the Defendant to tell the truth and suggesting that he write an apology letter to his grandfather does not constitute coercive law enforcement conduct rendering his statements involuntary. *See* United States v. Feyler, 55 F. Supp. 2d at 59-61. Accordingly, the Court finds that the State has satisfied its burden of showing the Defendant's statements manifested a voluntary, knowing, and intelligent waiver of his Miranda rights.

Nevertheless, the Defendant seeks to prevail by combining the Sixth Amendment right to counsel and the Miranda-Edwards "Fifth Amendment" right to counsel. The Defendant contends that, even if the Court finds he waived his Miranda right to counsel that his prior invocation of the offense-specific Sixth Amendment right with respect to his charges pending in District Court was also an invocation of the nonoffense-specific Miranda-Edwards right, thus invalidating his waiver. However, to find that the Defendant "invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge[s] [pending in District Court] is to disregard the ordinary meaning of that request." McNeil, 501 U.S. at 178-79 (citations omitted). The Supreme Court has made it clear that an

7

accused's invocation of his Sixth Amendment right to counsel during a judicial proceeding does not constitute an invocation of the Miranda-Edwards "Fifth Amendment" right to counsel. McNeil, 501 U.S. at 175-182.

## Conclusion

The State has satisfied its burden of showing that the Defendant's incriminating statements manifested a voluntary, knowing, and intelligent waiver of his Miranda rights. The Defendant's representation by counsel on a charged offense pending in the District Court does not constitute an invocation of either his fifth or sixth amendment right to counsel that precludes police-initiated interrogation on unrelated, uncharged offenses. Accordingly, the Defendant's Motion to Suppress is **DENIED**.

Accordingly, the entry is:

Defendant's Motion to Suppress is **DENIED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED: April 1, 2004

_____
Justice, Maine Superior Court

8

DEFENSE COUNSEL

CHRISTOPHER RUGE, ESQ.
P O BOX 220
ORONO   ME   04473


COUNSEL FOR THE STATE

GREGORY CAMPBELL ASST D.A.
OFFICE OF THE DISTRICT ATTORNEY
6 STATE HOUSE STATION
AUGUSTA   ME   04333