STATE OF MAINE                          SUPERIOR COURT
SOMERSET, ss                            CRIMINAL ACTION
                                        DOCKET NO. CR-03-477
                                        JM) - ___ - 11/3/___

STATE OF MAINE              )
                           )
            Plaintiff       )
                           )  REC'D & FILED DECISION ON MOTION TO
v.                          )  Wendy M. Robinson SUPPRESS EVIDENCE
                           )
SCOTT M. VIOLETTE,          )  NOV 03 2004
                           )
            Defendant       )  Clerk of Courts
                           )  Somerset County

                                                    NOV  9  2004

       This matter is before the Court on the Defendant's, Mr. Scott M. Violette, Motion

to Suppress statements made on September 19, 2003. The motion is denied.

                              **Background**

       On August 30, 2003 a fire occurred in Norridgewock, Maine. The Defendant was

questioned concerning the incident and was interviewed on three separate occasions by

State Fire Marshall's Investigators Kenneth Grimes and Scott Richardson and once by

Maine State Police polygraph operator Detective Troy Gardner. The first interview was

at the Defendant's residence on August 30, 2003 with the investigators and lasted for ten

to fifteen minutes. The Defendant was not read his Miranda rights. The second

interview was at the Norridgewock Fire Station with the investigators and lasted for

approximately one hour. The Defendant voluntarily agreed to attend this interview. The

Defendant's girlfriend, Jamie Richardson, accompanied him. The Defendant was not

read his Miranda rights at this interview. It is the events that occurred during the third

interview on September 19, 2003 that resulted in the Defendant making the statements at

issue. The Defendant agreed to meet the investigators and Detective Gardner at the

Bangor Mental Health facility in order to take a polygraph test. The first part of this

                                                                              1

interview lasted for two hours. The investigators did not conduct the polygraph exam. It was at this interview that the Defendant was given his <u>Miranda</u> rights in writing, which he immediately waived. The Defendant, eventually, clearly expressed his desire to speak to an attorney and the investigators stopped asking questions. They sent the Defendant to a lounge to wait for Richardson to return to pick him up. The investigators spoke with Richardson upon her arrival. According to their testimony, they wanted to find out if the Defendant had told her anything and informed her that the Defendant was a suspect. They also informed her of some inconsistencies that had developed in the Defendant's story. Richardson then met with the Defendant and confronted him with the inconsistencies. An emotional conversation ensued and the Defendant agreed to confess. The Defendant then returned and made statement to the investigators admitting that he had started the fire and reiterated that he was acting voluntarily. The Defendant was charged with Class A arson and is now moving to suppress the inculpatory statements made during the final, September 19th, interview.

## Discussion

### A.    <u>Miranda</u>

The Defendant argues that after he asked for an attorney at the end of the third interview on September 19, 2003, it was improper for the officers to continue to question him when he returned with Robinson to make the incriminating statements. The United Supreme Court in <u>Miranda v. Arizona</u>, 384 U.S. 436, 474 (1966), stated that if a suspect "states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and have him present during any subsequent questioning." The Court has also stated that after a

suspect expresses his desire to speak with an attorney, he is not subject to interrogation, "unless the accused himself initiates further communication, exchanges, or conversation with the police." Edwards v. Arizona, 451 U.S. 477, 485 (1981). The State argues that after the Defendant was read his Miranda rights at the beginning of the final interview, he voluntarily waived those rights and that his later request for an attorney was honored. The State further argues that the officer was merely clarifying the Defendant's desire for an attorney before ending the interview:

Scott Violette (SV): By the sounds of that I think I should probably see a lawyer first. Sounds like they're going to try to say I started it and I did not start it on purpose.

Detective Gardner (DG): Well, it sounds to me that they want to know if you started it. Obviously from the changes in your story, they have reason to be concerned. I need to know whether you want to continue – up to you – you do have a right to talk to an attorney.

SV: I think I am going to talk to an attorney.

DG: So are you telling me now that you want to talk to an attorney?

SV: I think I'm gonna still go with this but I am still going to get an attorney too.

DG: Okay, what I need to know, Scott, before we go any further . . .

DG: Do you want to talk to an attorney?

SV: Yes, I think so.

DG: It sounds to me that you're not sure if you want to talk to an attorney. My place is to make sure that you know that you have a right to, if you want to.

SV: Yes

DG: So, before we do anything else, are you saying that you want to talk to an attorney?

3

SV: Yes

DG: I will be with you in a second. Okay?

SV: Yes.

The interview ended and did not commence until after the Defendant returned with Robinson to make his final incriminating statement. The Defendant did not make a clear statement that he wanted to speak with an attorney until after Detective Gardner questioned him about it. Once it became clear that the Defendant, in fact, did want to speak with an attorney before proceeding, Detective Gardner ended the interview. This Court finds that Detective Gardner acted properly.

The Defendant further argues that the investigators used Robinson as an agent to continue the interview and persuade the Defendant to confess. If this were true, then the Defendant's incriminating statements would not be admissible, because his right to remain silent and his right to an attorney under the Fifth Amendment would not have been honored. However, the evidence before the Court does not support this argument. Upon returning with the Defendant, Robinson assured the officers that the officers merely "explained to her what was going on and the evidence and how the investigation was going . . . ." The officers testified that they wanted to know if the Defendant had told her anything, which further indicates the officer's respect for the Defendant's right to an attorney. Robinson stated that she told the Defendant to be honest with her and confronted him with the evidence given to her by the officers.[1] The evidence also reveals that the officers considered the interview to be over and were surprised when the

---

[1] In fact, Robinson even assured the officers that the Defendant was the one that physically led her back to the officers and that she was confident that he was not admitting it "to get it done and over with."

4

Defendant returned to make his statement.[2] Robinson was not acting as an agent of the police and, thus, it was not improper for her to voluntarily talk to the Defendant and persuade him to reinitiate the interview with the officers and confess.

This Court concludes that the Defendant's request for an attorney was properly honored and that Robinson was not acting as an agent of the police when she spoke with him and persuaded him to confess.

## B.    Confessions and Voluntariness

Confessions must be voluntary in order to be admissible. State v. Curtis, 552 A.2d 530, 532 (Me. 1988). Whether a confession is voluntarily is primarily a question of fact for the court to decide outside the presence of the jury. State v. Lockhart, 2003 ME 108, ¶ 29, 830 A.2d 433, 444. A voluntary statement is one that is "is the result of defendant's exercise of his own free will and rational intellect" and not a statement that results from "threats, promises or inducements made to the defendant." State v. McCarthy, 2003 ME 40, ¶ 12, 819 A.2d 335, 340; see also, State v. Rees, 2000 ME 55, ¶ 3, 748 A.2d 976, 977. A confession must not be a product of coercive police conduct and, under all circumstances; its admission must be fundamentally fair. State v. Smith, 615 A.2d 1162, 1164 (Me. 1992). The State bears the burden of proving beyond a reasonable doubt that the confession and statements were voluntary. Lockhart, 2003 ME 108, ¶ 30, 830 A.2d at 444. The trial court must consider the "totality of the circumstances" in making its decision of whether the statements were voluntary. State v. Coombs, 1998 ME 1, ¶ 7, 704 A.2d 387, 389. Internal and external factors such as the "details of the interrogation; duration of the interrogation, location of the interrogation;

---

[2] The officers even called the district attorney to ask for advice in order to make sure it was proper for them to continue questioning the defendant.

whether the interrogation was custodial, the recitation of <u>Miranda</u> warnings, the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant and the defendant's age, physical and mental health, emotional stability, and conduct" are all factors to be considered when determining the "totality of the circumstances." <u>State v. Sawyer</u>, 2001 ME 88, ¶ 9, 819 A.2d 1173, 1176; <u>Rees</u>, 2000 ME 55, ¶ 3, 748 A.2d at 977.

## C.   Voluntariness of Violette's Statements

The Defendant argues that the statements made on September 19, 2003 were not voluntary. In particular, he argues that his girlfriend, Richardson, was used as an agent of the police and interrogated him. He also argues that his mental state, i.e. "severe impairments or combination of impairments, namely a personality disorder, a learning disorder and an auditory processing disorder; and that he was in special education in school because of his borderline intellectual functioning" lead him to make an involuntary statement.

### 1.   Persuasion by Richardson

This Court has concluded that Richardson was not acting as an agent of the police. This is a determinative conclusion, because it is the *police* that must cause the coercion. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 170 (1986); <u>Smith</u>, 615 A.2d at 1164. Numerous other cases have held that it is permissible for a suspect to be questioned or encouraged to confess by a father, mother, wife or girlfriend. <u>See</u> <u>e.g.</u>, <u>Arizona v. Mauro</u>, 481 U.S. 520, (1931) (no interrogation under <u>Miranda</u> when suspect's wife spoke with suspect about murder with a police officer present and recording the conversation, after the suspect had invoked his right to counsel); <u>Lowe v. State</u>, 650 So.2d 969, 972-74 (Fla.

1994) (suspect not interrogated under Miranda when suspect's girlfriend sought and was granted access to suspect after he had invoked his right to counsel, and she persuaded him to confess); United States v. Gaddy, 894 F.2d 1307, 1309-11 (11th Cir. 1990) (no Miranda violation when suspect's aunt, who was a police officer, called suspect in jail after he invoked his right to counsel and persuaded him to confess); Snethen v. Nix, 885 F.2d 456, 457-60 (8th Cir. 1989) (accused not interrogated under Miranda when his mother, who gained access to him in prison by telling officers "if [my son] did this, he will tell me," exhorted accused to confess so her other son would not be unjustly punished); Buttersworth v. State, 400 S.E.2d 908 (1991) (no Miranda violation when suspect's father elicited location of body from in-custody suspect and told sheriff); State v. Massey, 342 S.E.2d 811, 822 (N.C. 1986) (suspect not subjected to custodial interrogation under Miranda when suspect's father asked him at jail in the presence of a police officer if he shot the victim and suspect admitted it). Richardson was not acting as an agent of the officers, therefore, persuading the Defendant to confess cannot be considered illegally coercive and involuntary under the law.

However, even if Richardson did act as an agent of the police, her actions would still not amount to coercion. The Law Court has drawn the line between confessions gained "by some threat or solicited by some promise (such would be involuntary and inadmissible) [and confessions gained through] a willingness on the part of the accused to tell the truth and relieve his conscience (such would be regarded as voluntary and admissible.)" State v. Smith, 277 A.2d 481, 490 (Me. 1971). Thus, a mere admonition or exhortation to tell the truth, as opposed to a promise of leniency, does not render a confession involuntary. State v. Theriault, 425 A.2d 986, 990 (Me. 1981). The evidence

7

reveals that while Richardson did play a major role in persuading the Defendant to confess, it does not seem that she used any tactics that the police would have been forbidden to use. Richardson confronted the Defendant as to why he had lied to her and encouraged him to tell the investigators the truth. While she, due to the intimate relationship, may have had more inherent power over the Defendant, this does not rise to the level of involuntariness, especially as the Defendant repeatedly indicated that he was voluntarily confessing.

Under these circumstances, this Court finds that there was no improper police conduct when Richardson persuaded the Defendant to confess and the Defendant was "acting of his own free will and rational intellect," see State v. McCarthy, 2003 ME 40, ¶ 12, 819 A.2d at 340, even if Richardson was acting as an agent for the police.

2.      *The Defendant's Mental State.*

Dr. James Jacobs conducted two examinations of the Defendant. He questioned the voluntariness of the statements and relied heavily on statements that he erroneously believed were told to the Defendant by the investigators in order to conclude that the Defendant had been confused by the investigators. In fact, Richardson made the statements to the Defendant during the second interview. While the report is discredited because of this faulty assumption, it still underscores the fact that the Defendant was given numerous opportunities to leave the examinations and was repeatedly reminded that he was free to leave and was acting voluntarily.

The first interview was at the Defendant's home and lasted for only a short time. The second interview was at the Norridgewock Fire Station and Richardson accompanied the Defendant. This interview only lasted for approximately one hour. The Defendant

8

voluntarily attended this interview. While the investigators closed the door, they told the Defendant that they were doing it only for privacy reasons and that he was free to leave. The final interview, on September 19, 2004, was at the Bangor Mental Health Facility and the Defendant voluntarily met with the investigators and Detective Gardner to perform a polygraph test. The Defendant was read his rights, signed a waiver and was repeatedly assured that he could leave at any time. The investigators interviewed the Defendant for approximately two hours, before the Defendant clearly asked for an attorney. The interview ended and the Defendant signed the same waiver again, indicating that he was appearing voluntarily. After he returned to make his confession, he repeatedly assured the investigators that he was acting voluntarily.

Applying the factors under the "totality of the circumstances" test; the details of the interrogation reveal that the Defendant was treated politely, was not harshly interrogated and was repeatedly reminded that he was free to leave and was acting voluntarily. The interviews did not last very long, approximately three hours over three days. Only one of the interviews was held at the fire station and none were held at a police station. It cannot be alleged that the Defendant's home and the health facility were factors that lead the Defendant to act involuntarily, especially when he voluntarily appeared at the final two interviews. The Defendant was read his <u>Miranda</u> rights during the third interview before beginning the final interview and he indicated to the investigators, in writing, that he understood his rights.[3] At most, only three officers were involved in the interviews at any one time, but the Defendant had his girlfriend present in the second interview and the final part of the final interview. While the investigators

---

[3] Dr. Jacobs' report also reveals that the Defendant understood his rights.

were persistent, the evidence reveals that their persistence was not so oppressive that it would rise to a level necessary to take away the Defendant's free and rational will. No promises or threats were made. While the Defendant had a low education level and does seem to suffer from some mental defects, none of them are so severe that the Defendant did not understand his rights or that he did not have to give the confession during the third interview.

The Defendant points to the fact that the Defendant was emotionally upset and sobbing during the confession to argue that he was not acting voluntarily. However, the Law Court has clearly stated that the fact that a suspect may be crying or upset during an interrogation does not mean that the statements were procured involuntarily. See State v. Durepo, 472 A.2d 919, 921 (Me. 1984).

Under the totality of the circumstances test, the Court finds that the Defendant's statements were voluntary.

## D.      Defendant's Right to Counsel

The Defendant argues that he was deprived of his right to counsel. As indicated above, the Defendant's Fifth Amendment right to counsel was not violated, because he voluntarily returned to speak with the officers and that Robinson was not acting as an agent of the police. However, the Sixth Amendment of the U.S Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Nonetheless, the U.S. Supreme Court has stated that the Sixth Amendment is offense specific "and that it does not attach until a prosecution has commenced" or after "the initiation of adversary judicial criminal proceedings . . . whether by way of formal charge, preliminary hearing, indictment,

information, or arraignment." <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991). Here, charges were filed after the September 19th interview, therefore, the Defendant's Sixth Amendment right to counsel had not yet attached.

## <u>Conclusion</u>

Accordingly, the Defendant's Motion to Suppress is **DENIED**.

Accordingly, the entry is:

Defendant's Motion to Suppress is **DENIED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED: //-/-04

_____
Justice, Maine Superior Court

11

STATE OF MAINE
  vs
SCOTT M VIOLETTE
19 DEPOT STREET
NORRIDGEWOCK ME 04957

DOB: 12/26/1974
Attorney: JANET MILLS
         WRIGHT & MILLS PA
         263 WATER STREET
         PO BOX 9
         SKOWHEGAN ME 04976-0009
         APPOINTED 12/18/2003

Filing Document: INDICTMENT
Filing Date: 12/18/2003

SUPERIOR COURT
SOMERSET, ss.
Docket No  SKOSC-CR-2003-00477

**DOCKET RECORD**

State's Attorney: JAMES MITCHELL

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   ARSON
Seq 776   17-A  802(1)(A)                    Class A        08/30/2003 NORRIDGEWOCK
   GRIMES                    / MFM

## Docket Events:

12/18/2003 FILING DOCUMENT -  INDICTMENT FILED ON 12/18/2003

           TRANSFER -  BAIL AND PLEADING GRANTED ON 12/18/2003

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 12/18/2003

12/18/2003 Party(s): SCOTT M VIOLETTE
           ATTORNEY -  APPOINTED ORDERED ON 12/18/2003

           Attorney: JANET MILLS
12/18/2003 Charge(s): 1
           HEARING -  ARRAIGNMENT SCHEDULED FOR 12/29/2003 @ 8:30

           NOTICE TO PARTIES/COUNSEL
12/18/2003 WARRANT -  ON COMP/INDICTMENT ORDERED ON 12/18/2003
           JOSEPH M JABAR , JUSTICE
12/18/2003 WARRANT -  ON COMP/INDICTMENT ISSUED ON 12/18/2003

           CERTIFIED COPY TO WARRANT REPOSITORY
12/18/2003 BAIL BOND - $20,000.00 CASH BAIL BOND SET BY COURT ON 12/18/2003
           JOSEPH M JABAR , JUSTICE
           OR $100,000.00 SURETY WITH CONDITONS:  NO USE OR POSSESSIONOF INCINDIARY DEVISES.  NOT USE
           OF ALCOHOL OR DRUGS AND TO SUBMIT TO SEARCH & TESTING FOR THE SAME.
12/18/2003 Charge(s): 1
           HEARING -  ARRAIGNMENT NOTICE SENT ON 12/18/2003

12/29/2003 WARRANT -  ON COMP/INDICTMENT RECALLED ON 12/29/2003

           CERTIFIED COPY TO WARRANT REPOSITORY
01/09/2004 Charge(s): 1

Printed on: 11/03/2004

HEARING - ARRAIGNMENT HELD ON 12/29/2003
JOSEPH M JABAR , JUSTICE
Attorney: PAUL SUMBERG
DA: BRENT DAVIS          Reporter: TAMMY DROUIN
Defendant Present in Court


READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO DEFENDANT.  21 DAYS TO FILE MOTIONS
01/09/2004 Charge(s): 1
PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 12/29/2003

01/09/2004 BAIL BOND -  SURETY BAIL BOND COMMITMENT ISSUED ON 12/29/2003
JOSEPH M JABAR , JUSTICE
$100,000 SURETY
01/09/2004 WARRANT -  ON COMP/INDICTMENT EXECUTED ON 12/18/2003

01/09/2004 WARRANT -  ON COMP/INDICTMENT RETURNED ON 12/29/2003

01/09/2004 BAIL BOND - $20,000.00 CASH BAIL BOND COMMITMENT ISSUED ON 01/09/2004
CHARLES C LAVERDIERE , JUDGE
Attorney:  JANET MILLS
DA:  BRENT DAVIS          Reporter: TAMMY DROUIN
BAIL SHOULD HAVE BEEN SET AT $20,000 CASH OR $100,000 SURETY W/ CONDS:    NO USE/POSS OF INCINDIARY DEVICES AND NO USE/POSS OF ALCOHOL OR SCH. DRUGS AND SUBMIT TO SEARCH/TESTING FOR SAME
01/09/2004 BAIL BOND -  SURETY BAIL BOND OTHER ACTION NOTE ON 01/09/2004

AMENDED COMM. ORDER ISSUED DUE TO ERROR.
01/09/2004 BAIL BOND -  SURETY BAIL BOND BAIL RELEASED ON 01/09/2004

01/20/2004 TRIAL -  DOCKET CALL SCHEDULED FOR 02/02/2004 @ 9:00

02/25/2004 TRIAL -  DOCKET CALL CONTINUED ON 02/02/2004

03/01/2004 TRIAL -  JURY TRIAL SCHEDULED FOR 04/20/2004 @ 8:30

NOTICE TO PARTIES/COUNSEL
09/14/2004 TRIAL -  JURY TRIAL NOT HELD ON 08/25/2004

09/15/2004 TRIAL -  DOCKET CALL SCHEDULED FOR 10/04/2004 @ 8:30

10/04/2004 OTHER FILING -  MEMORANDUM OF LAW FILED ON 09/29/2004

FILED BY DEFENDADNT REGARDING SUPPRESSION OF STATEMENTS
10/04/2004 OTHER FILING -  MEMORANDUM OF LAW FILED ON 09/29/2004

FILED BY ADA MITCHELL - RE STATE'S OPPOSITION TO MOTION TO SUPPRESS
10/26/2004 TRIAL -  DOCKET CALL NOT REACHED ON 10/26/2004

11/03/2004 MOTION -  MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 11/24/2003

11/03/2004 HEARING -  MOTION TO SUPPRESS STATEMENT HELD ON 09/02/2004
JOSEPH M JABAR , JUSTICE

Attorney: JANET MILLS
DA: JAMES MITCHELL          Reporter: PEGGY STOCKFORD
Defendant Present in Court
11/03/2004 MOTION -  MOTION TO SUPPRESS STATEMENT DENIED ON 11/03/2004
JOSEPH M JABAR , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST:  _____
Clerk